WILLIAM M. ROYLANCE COMPANY, Appellant, vs. JEWETT & SHERMAN COMPANY, Respondent.

*September 16, 1926—January 11, 1927.*

*Sales: Mistake in order subsequently rectified: Failure of buyer to accept goods: Damages: Special circumstances where there is no resale market.*

1. Defendant through a broker ordered 450 cases of honey, two tins to the case, but by mistake the plaintiff seller was advised that the order was for 450 tins and made shipment accordingly. Later the broker sent a corrected order, and plaintiff made a second shipment which defendant refused to accept. *Held,* that the defendant breached its contract in refusing to accept and pay for the second car. p. 497.

2. Where there was no available market for the honey when the buyer breached the contract and the seller was required to store it and send an agent to resell it, a special circumstance, within the meaning of sub. (3), sec. 121.64, Stats., was thereby created, and, notwithstanding a resale by the agent at the contract price, the seller's damages were fixed under sub. (2) as a loss directly and naturally resulting in the ordinary course of events, and included the expenses of the agent, storage, demurrage, and interest charges. p. 498.

3. Evidence of a custom that if honey sold f. o. b. shipping point was shipped from a point nearer its destination the seller was entitled to receive the difference in rate, is *held* to authorize the recovery of the amount thereof from the buyer. pp. 498, 499.

William M. Roylance Co. v. Jewett & Sherman Co. 191 Wis. 490.

APPEAL from a judgment of the circuit court for Milwaukee county: E. T. FAIRCHILD, Circuit Judge. *Affirmed in part; reversed in part.*

Action on contract on two counts involving the sale by plaintiff to the defendant of 450 cases or 900 cans of honey, weighing about 120 pounds to the case.

The plaintiff corporation was located at Provo, Utah, and was engaged as a wholesale dealer in honey. The defendant was a corporation engaged in the wholesale grocery business, located at Milwaukee, Wisconsin. The Louis Hilfer Company was a corporation located at Milwaukee, Wisconsin, and engaged as a merchandise broker.

In August, 1919, the defendant employed the broker to obtain quotations on honey which it desired to purchase. On August 8th the broker wrote to the plaintiff asking for quotations, and the plaintiff replied, quoting price and advising that the honey would be put up in five-gallon cans, cased two cans to the case, each case weighing about 120 pounds net. The broker replied to this letter by telegram August 18th, as follows: "Confirm Jewett-Sherman four hundred fifty cases White Clover honey eighteen cents subject approval sample. Mail sample promptly."

On the same day plaintiff replied to the broker: "Submitting sample today. Wire arrival, and if satisfactory will advise definitely then."

September 8th the broker wired the plaintiff: "Sample honey rec'd and approved by Jewett-Sherman. Kindly wire confirmation four hundred fifty sixty-pound tins eighteen cents for immediate shipment."

It will be noted that this order is for 450 sixty-pound *tins* instead of 450 *cases*. The evidence of the broker was to the effect that this was a mistake on the part of the stenographer, and that the order should have been for 450 cases.

In response the plaintiff wired on September 9th: "Confirm sale car extracted honey Jewett. Will ship few days."

The broker replied on the same day by letter confirming the order for 450 cases, as follows:

"We are inclosing an order for four hundred and fifty cases of White Clover honey sixty-pound tins at eighteen cents a pound.

"We received confirmation of this sale today. Kindly make shipment within a few days as per your wire; and send us copy of invoice when you make shipment."

The evidence discloses that the broker generally has a blank form, which is called a confirmation of sale or memorandum of sale, which he fills out by indorsing thereon the terms of the sale, names of the parties, commodity sold, and delivers the original to the buyer and sends a carbon copy to the seller. The broker in this case sent a carbon copy of such memorandum to the plaintiff on September 9th, reading as follows:

> "Seller's Memorandum.
> "The Louis Hilfer Company.
> "Milwaukee Office.
> "No. 1484.   Salesman D. S. A.   Date order, 9/9/19.
> "Sold to Jewett & Sherman Co.
> "Address, 287 Broadway,
> "Milwaukee, Wis.
> "For account of the Wm. M. Roylance Co.
> "Address,         Provo, Utah.
> "450 c/s 60 lb. tins White Clover honey at 18c lb.
> "Terms:  Regular.
> "F. O. B.  Provo, Utah.
> "Shipping instructions:  At once."

The evidence shows that when the broker received the quotation of eighteen cents he knew that it meant eighteen cents f. o. b. Provo, Utah, but according to the custom of the trade the honey might be shipped from some other point than Provo, and if so, the plaintiff would be entitled to charge the Provo rate. If the actual rate from point of

shipment was less than the rate from Provo, the plaintiff would receive the difference, and if the actual rate was more than the Provo rate the plaintiff would have to stand the extra expense. In reply to the confirmation telegram of September 9th by the broker, the plaintiff, on September 10th, advised the defendant by letter of the situation and inclosed an invoice of the honey. The letter reads:

"Thanks for your order given us through the Louis Hilfer Company, for car extracted honey in five-gallon tin cans, two cans to the case at 18c per pound f. o. b. cars here. This car is at an outside point, and our man is leaving to load it Thursday or Friday; it's at a point east of here, and we are uncertain as to what the freight rate is, but the freight rate from Provo, Utah, to Milwaukee is $1.25 per cwt. We will therefore bill the car at 19¼c per pound, expense bill to be taken in part payment of the draft, but of course in this way we would be allowing the freight on the weight of the case, which of course we could not do, therefore you can weigh a case or two yourself after you unload the car, and send us your personal check. Find what the freight would amount to on the case, as of course we will load the honey at 18c per pound net weight f. o. b. cars here. You, of course, appreciate this, because of your handling large shipping transactions. A copy of this letter will go to the Louis Hilfer Company for their information."

The defendant did not reply to the above letter. The draft accompanied the shipment, and some time after paying the draft the defendant asked the plaintiff to refund the difference in the freight rates, to which the plaintiff replied by letter explaining the situation.

When the plaintiff received the memorandum of sale, dated September 9th, from the Louis Hilfer Company, and saw that the order was for 450 cases instead of 450 tins, plaintiff wired the broker on the 13th of September:

"Central Georgia twenty-five three seventy shipped Jewett yesterday. Sell another car same price immediate acceptance reasonably prompt shipment. Just received your letter ninth which reads four hundred fifty cases. Please

note your telegram eighth said four hundred fifty tins, evidently your mistake. Can ship another car if answered immediately."

To this the broker replied on September 15th:

"Jewett-Sherman do not understand your letter. Order was for four hundred fifty cases at eighteen cents f. o. b. Utah. Mail corrected invoice, rush shipment."

To this plaintiff replied on September 16th:

"Answering your yesterday's lettergram, please see our telegram of thirteenth which refers your telegram eighth. Can ship Jewett another car of four hundred fifty cans immediately if wanted. Answer quick."

Plaintiff received the following telegram, dated September 17th, from the broker: "Ship four hundred fifty cans. Jewett not interested another car."

Thereupon the plaintiff shipped another 225 cases or 450 cans of honey to Milwaukee, and wrote defendant a letter on the 18th explaining the situation:

"Thanks for your order given us through the Louis Hilfer Company, for other car of 450 cans extracted honey.

"Sorry there was a misunderstanding in the original telegram which read 450 sixty-pound tins, which I understand from the Louis Hilfer Company this should have been 450 cases containing two 60-pound tins each; however, I trust there will be but little inconvenience and that the first and second cars will arrive promptly."

A copy of the letter was mailed to the Louis Hilfer Company. Defendant did not reply to this letter, but the broker replied on September 22d by wire:

"Received copy letter Jewett-Sherman eighteenth. It seems you are confused on orders. They only want one car of four hundred fifty cases, so kindly do not ship them two cars notice our wire fifteenth."

Responding to this telegram the plaintiff wired:

"Referring your yesterday's night lettergram first car we shipped Jewett contained two hundred twenty-five cases.

Shipped them another car containing same amount making total four hundred fifty cases all told in the two cars shipped. Hope no misunderstanding because both cars shipped. Answer."

Plaintiff received no other advice from the defendant or from the broker that the entire order was wanted in one car. Neither the defendant nor the broker gave any advice to the plaintiff, in reply to its wire of September 16th, that it did not desire the balance of the order for honey, which was shipped in the second car. On October 6th the plaintiff wrote to the defendant, inclosing invoice for the second car, as follows:

"Inclosed herewith is invoice for car honey C. & N. W. No. 6892 which went forward to you September 27. Trust car arrived quick time and good condition."

Plaintiff received no reply to this letter from the defendant or the broker, but received a telegram, dated October 10, 1919, from the First Wisconsin National Bank of Milwaukee, stating that the draft through that bank on *Jewett & Sherman* for the value of the honey was unpaid, *Jewett & Sherman* claiming that the goods were not ordered.

The action was tried in the civil court of Milwaukee county, where the court dismissed the complaint and entered judgment for costs against the plaintiff. On appeal to the circuit court the circuit court found for the plaintiff on the first count and dismissed the complaint as to the second count, and granted plaintiff judgment for $51.33 and costs. From such judgment the plaintiff appeals to this court.

For the appellant there was a brief by *Carroll & Thekan* of Milwaukee, and oral argument by *George J. Carroll.*

*Arnold C. Otto* of Milwaukee, for the respondent.

The following opinion was filed October 12, 1926:

CROWNHART, J. The appellant claims that it is entitled to damages by reason of the defendant refusing to receive

and pay for the carload of honey ordered through the defendant's broker from the plaintiff. The evidence before this court is substantially all in writing and consists of letters and telegrams passing between the defendant, its broker, and the plaintiff. A careful examination of these documents makes it very clear what the actual contract was and how the dispute occurred. The defendant gave its order to the broker to purchase 450 cases of honey. The defendant wanted 450 cases and the broker so understood, but through an error of the stenographer the order was for 450 tins, or half of the defendant's requirement. The plaintiff filled the order for 450 tins, and then the broker discovered the mistake and ordered the balance of the honey required by the defendant. The plaintiff filled this order in a second car and sent it on. When this second car arrived at Milwaukee, the defendant, for the first time, refused to accept the shipment or pay the draft. The whole correspondence shows absolute good faith on the part of the plaintiff and good faith on the part of the broker. The testimony of the broker at the trial plainly indicates that there was no misunderstanding as to the amount of honey wanted by the defendant at any time, until after the second car had been shipped. The testimony offered in behalf of the defendant is equally conclusive that the defendant wanted 450 cases of honey, and that it directed its broker to procure that amount. Mr. Horter, in behalf of the defendant, testified:

"I ordered 450 cases—that is what I wanted, but the confirmation was very confusing to me. . . . That is where the mistake was made, ordering 450 60-pound tins at 18c— that is one half of our order. Somebody made a mistake. That is undoubtedly where the misunderstanding arose. We had instructed the broker that we would take 450 cases and instead of that he ordered 450 tins. . . . The one point which I did not understand in this letter is this—I received an invoice calling for 225 cases, which constituted

one car, together with this letter thanking me for the order. This constituted only one half of the order. I naturally wondered what happened to the other part of the order, so I advised Hilfer and he tried to straighten it up."

The fact is that the broker did straighten it out by explaining to the plaintiff that the order should have been for 450 cases, and that the defendant wanted 450 cases. The broker was the agent for the defendant in ordering the honey, and it was no fault of the plaintiff that there was a mistake in the broker's original order. The defendant was in no wise damaged because the honey was shipped in two cars instead of one. The price was the same. It is clear that the defendant breached its contract in refusing to accept and pay for the second car of honey.

Upon the refusal of the defendant to accept the second car, the plaintiff ordered the broker to dispose of the car elsewhere, but received word from the broker that he could. not make the sale. In order to save the demurrage charges the plaintiff ordered the honey stored in a warehouse, and tried to sell the same through another broker, but was unsuccessful. The plaintiff, not being able to dispose of the honey through a broker, sent its agent on from Utah to dispose of the honey. He was successful in selling the honey at the same price at which the defendant had contracted, but he had to give sixty days' time and had to pay the storage and demurrage charges, together with his expense for the trip. The interest charge by reason of refusal to accept the honey, and consequent delay in final disposition thereof, amounts to $90.56. Also, there was a necessary allowance to the purchasers for shortage and damage in transit. These items, after giving credit for the amount received for the honey, leave a balance of $568.66, loss to the plaintiff.

The defendant contends that the plaintiff sold the honey

for the same price that defendant was to pay, and hence there is no damage. The rule of damage is given in the Uniform Sales Act, ch. 121, Stats., as follows:

"Section 121.64 (1) . . .

"(2) The measure of damages is the estimated loss directly and naturally resulting, in the ordinary course of events, from the buyer's breach of contract.

"(3) Where there is an available market for the goods in question, the measure of damages is, in the absence of special circumstances, showing proximate damage of a greater amount, the difference between the contract price and market or current price at the time or times when the goods ought to have been accepted, or, if no time was fixed for acceptance, then at the time of the refusal to accept."

The testimony disclosed that there was no available market for the honey at the time in question. The plaintiff tried to secure a sale of the honey through the defendant's own broker and failed, and then tried to secure a sale through another broker and failed. This created a special circumstance, which takes the case out of sub. (3) and leaves the damages to be fixed under sub. (2). The plaintiff was required to use its best judgment in disposing of the honey. There is no question but it did so. The loss and expense were the result of defendant's breach of contract. It seems that the actual damages of the plaintiff, as stated, directly and naturally resulted, in the ordinary course of events, from the buyer's breach of contract, and the buyer is bound to respond accordingly.

The defendant asks for a review of the judgment of the circuit court, and contends that it is entitled to a judgment for $45.10 overpayment. Defendant contends that it should be required to pay only the actual freight, which was less than the freight rate from Provo. We think there is no dispute as to the custom of the trade, and we think the defendant fully understood it. Certainly if the shipment had been from a point where the freight rate was greater than

that from Provo, it would have refused to pay the additional charge. We think the judgment of the circuit court on the first count was correct.

There is no substantial dispute as to the facts, and no good purpose will be subserved by ordering a new trial.

*By the Court.*—The cause is remanded, with directions to affirm the judgment of the circuit court on the first count in the complaint, and to grant judgment in favor of the plaintiff on the second count, in the sum of $568.66, with interest and costs.

A motion for a rehearing was denied, with $25 costs, on January 11, 1927.